CHRISTOPHER J. CANNON, State Bar No. 88034
MATTHEW A. LAWS, State Bar No. 273697
Sugarman & Cannon
180 Montgomery Street, Suite 2350
San Francisco, CA 94104
Telephone: 415-362-6252
Facsimile: 415-362-6431

Attorneys for Defendant DEANTE KINCAID

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DEANTE KINCAID, PURVIS ELLIS, JPSEPH PENNYMON, and DAMIEN MCDANIEL,<br><br>Defendants. | Case No. CR-13-00818 PJH<br><br>**ALL DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE SEIZED FROM ILLEGAL SEARCH CONDUCTED ON RESIDENTIAL CURTILAGE**<br><br>Date: May 13, 2015<br>Time: 1:30 pm<br>Judge: Hon. Phyllis J. Hamilton |

TO: United States of America, Plaintiff; Melinda Haag, United States Attorney; and Joseph Alioto, Assistant United States Attorney:

PLEASE TAKE NOTICE that on May 13, 2013 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Phyllis J. Hamilton, defendants Deante Kincaid, Purvis Ellis, Joseph Pennymon, and Damien McDaniel will and hereby move to suppress all evidence and the fruits of all evidence seized from an illegal warrantless search of the gated and enclosed parking lot at 1759 Seminary Ave, Oakland California on January 21, 2013.

Dated: February 6, 2015                  Respectfully submitted,

                                          /s/
                                         Christopher J. Cannon
                                         Matthew A. Laws
                                         Attorneys for Deante Kincaid
                                         On Behalf of All Defendants

i

**TABLE OF CONTENTS**

STATEMENT OF FACTS ..................................................................................................................1

ARGUMENT ....................................................................................................................................2

I.  THE FOURTH AMENDMENT PROTECTS AGAINST SEARCHES CONDUCTED BY TRESPASS ..........................................................................................................................2

  A.  Fenced in Areas Are Constitutionally Protected..................................................4

  B.  Car Ports Viewable From The Street Are Constitutionally Protected ................5

  C.  Karsseboom's Trespass Into The Gated Area Behind 1759 Seminary Avenue Was A Constitutional Violation Even Under The Dunn Factors..................................7

    1.  The Proximity Of The Area To The Home...............................................8

    2.  Whether The Area Is Included Within An Enclosure Surrounding The Home..................................................................................................8

    3.  The Nature Of The Uses To Which The Area Is Put................................9

    4.  The Steps Taken To Protect The Area From Observation By People Passing By..................................................................................................9

    5.  The Ability To Observe Or Sharing Of Property Does Not Vitiate Fourth Amendment Protection ............................................................................10

II.  THE OFFICER'S OBSERVATIONS WERE NOT MADE FROM A LOCATION WHICH THE PUBLIC HAD AN IMPLIED LICENSE TO OCCUPY ......................................11

III.  THE GOVERNMENT MAY NOT CLAIM GOOD FAITH BECAUESE JONES & PAREA-REY PREDATED THE TRESPASS AND SEARCH HERE. ......................................13

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

Davis v. United States,
 131 S.Ct. 2419 (2011) .................................................................................................................13

Florida v. Jardines,
 133 S.Ct. 1409 (2013) ...............................................................................................................3, 4

Katz v. United States,
 389 U.S. 347 (1967) ...................................................................................................3, 7, 10, 11

Kentucky v. King,
 131 S.Ct. 1849 (2011) .................................................................................................................12

Los Angeles Police Protective League v. Gates,
 907 F.2d 879 (9th Cir. 1990) .......................................................................................................2

United States v. Duenas,
 691 F.3d 1070 (9th Cir. 2012) ...................................................................................................10

United States v. Dunn,
 480 U.S. 294 (1987) ............................................................................................................*passim*

United States v. Johnson,
 256 F.3d 895 (9th Cir. 2001) .......................................................................................................6

United States v. Jones,
 132 S.Ct. 945 (2012) ...........................................................................................................*passim*

Pineda-Moreno v. United States,
 132 S.Ct. 1533 (2012) ....................................................................................................7, 11, 14

United States v. Matlock,
 415 U.S. 164 (1974) ....................................................................................................................11

United States v. Nohara,
 3 F.3d 1239 (9th Cir. 1993) .......................................................................................................14

United States v. Perea-Rey,
 680 F.3d 1179 (9th Cir. 2012) ..............................................................................................*passim*

United States v. Pineda–Moreno,
 591 F.3d 1212 (9th Cir. 2010) .............................................................................................7, 11, 14

United States v. Pineda-Moreno,
 617 F.3d 1120 (9th Cir. 2010) ...................................................................................................10

United States v. Ross,
    456 U.S. 798 (1982) ..................................................................................................... 2, 10

United States v. Struckman,
    603 F.3d 731 (9th Cir. 2010) ......................................................................................... 4, 5, 8

**Other Authorities**

http://spotcrime.com/ca/oakland ............................................................................................... 9

# MEMORANDUM OF POINTS AND AUTHORITIES
# STATEMENT OF FACTS

On January 21, 2013, Officer Eric Karsseboom drove to 1759 Seminary Avenue in an attempt to locate a vehicle after being given a license plate number and vehicle description.  State Preliminary Hearing Transcript attached as Exhibit A ("PX TX") at p. 5-6.[1]  Karsseboom was undercover; id. at 8; see also id. at 21-22;  driving his undercover Chevy Tahoe.  Id. at 7-8.  Karsseboom testified the front of the 1759 Seminary apartment complex was "protected by a black security gate." Id. at 9.  The security gate had pedestrian entrance on the south side of the complex and the "drive-in gate [was] on the north side." Id.  Karsseboom testified that "the rear has an open lot, and I believe at the time there was a carport area." Id.  The driveway to reach the back of 1759 Seminary is approximately 200 feet long, according to Karsseboom's estimate.  Id. at 16.  When Karsseboom approached 1759 Seminary, he "saw that the front gate or drive-in gate was closed." Id. at 13.  A passenger in a car sitting outside the gate exited the car and opened the front gate.  Id. at 14.  The passenger reentered the car and it drove "into the driveway to the rear of the apartment complex." Id.  Karsseboom testified that he followed behind and drove through the gate and into the rear gated parking area of the apartment complex.  Id. at 15.  Making a U-turn in the rear of the apartment complex, Karsseboom spotted the vehicle he had been sent to locate.  Id.; see also id. at 5.  As Karsseboom drove back down the driveway, he "realized that the gate was now closed again." Id. at 17.  Karsseboom's warrantless and surreptitious entry led to a surpise confrontation with three black males, the discharge of a gun, a minor wound to Karsseboom's arm, and this prosecution.  If not for Karsseboom's warrantless trespass into the gated parking area, this confrontation would never have happened.

---

[1] The government produced a California state court preliminary hearing transcript in discovery. We will refer to the pages indicated by the bates numbers.  Page 1 of the proceedings begins at bates PXTRANS-0003.

**ARGUMENT**

## I. THE FOURTH AMENDMENT PROTECTS AGAINST SEARCHES CONDUCTED BY TRESPASS

As the Ninth Circuit stated in Los Angeles Police Protective League v. Gates, 907 F.2d 879 (9th Cir. 1990), another case involving a search of the curtilage surrounding a home:

> Nowhere is the protective force of the fourth amendment more powerful than it is when the sanctity of the home is involved. [ ] The sanctity of a person's home, perhaps our last real retreat in this technological age, lies at the very core of the rights which animate the amendment. Therefore, we have been adamant in our demand that absent exigent circumstances a warrant will be required before a person's home is invaded by the authorities.

L.A. Police Prot. League v. Gates, 907 F.2d 879, 884 (9th Cir. 1990) (internal citations omitted). The Court then went on to consider whether an expectation of privacy extended to a garage associated with the searched home and held that it did. East Oakland apartment residents are entitled to the same Fourth Amendment protection for their car parking areas as wealthier residents of Los Angeles receive. [2] See United States v. Ross, 456 U.S. 798, 822 (1982).

Prior to United States v. Jones, 132 S.Ct. 945 (2012), curtilage searches were analyzed under the Dunn factors, an analysis first set out in United States v. Dunn, 480 U.S. 294 (1987), which focused on individuals' reasonable expectation of privacy in areas surrounding their homes. In United States v. Jones, however, the Supreme Court added to our privacy protections by giving new life to the trespassory test. If law enforcement must trespass into or onto private property, that search in forbidden by the Fourth Amendment. In Jones, the Supreme Court held an unreasonable search occurred under the Fourth Amendment when "the Government physically occupied private property for the purpose of obtaining information." United States v. Jones, 132 S. Ct. 945, 949 (2012). In

---

[2] "[T]he central purpose of the Fourth Amendment forecloses such a distinction. For just as the most frail cottage in the kingdom is absolutely entitled to the same guarantees of privacy as the most majestic mansion, so also may a traveler who carries a toothbrush and a few articles of clothing in a paper bag or knotted scarf claim an equal right to conceal his possessions from official inspection as the sophisticated executive with the locked attaché case." United States v. Ross, 456 U.S. 798, 822 (1982).

2

Jones, the government argued that there could be no "reasonable expectation of privacy" in the undercarriage of a car "[a]nd the locations of the [car] on public roads, which were visible to all." Id. at 950. The Court held that the "reasonable expectation of privacy" test set forth in Katz v. United States, 389 U.S. 347 (1967), was not necessary to the determination because the Fourth Amendment, at a minimum, "was understood to embody a particular concern for government trespass upon the areas ("persons, houses, papers, and effects") it enumerates." Id. The Court made clear that the physical intrusion of property to conduct a search is sufficient to violate the Fourth Amendment because "the Katz reasonable-expectation-of-privacy test has been *added to,* not *substituted for,* the common-law trespassory test." Id. at 952.

Here, Karsseboom physically intruded into a locked parking area by following another vehicle through the gate. Officer Malcom Miller, who was on the telephone with Karsseboom at the time, wrote in his report: "Ofc Karsseboom stated to stay on the phone with him, while he checked out this address, and if anything sounded wrong, to notify dispatch. I was in the area of Macarthur Blvd and Seminary Ave during this time, and remained on the phone. As I listen [sic] on the phone, I could hear Ofc Karsseboom state that the front gate was locked, and he was looking for another way into this address." Exhibit B, p. 1.[3]

In Florida v. Jardines, 133 S.Ct. 1409 (2013), the Supreme Court reinforced that property rights set the baseline for Fourth Amendment protection and held that "though Katz may add to the baseline, it does not subtract anything from the Amendment's protections" when the government physically invades a constitutionally protected area. Florida v. Jardines, 133 S.Ct. 1409, 1414 (2013). Florida v. Jardines involved a drug detection dog-sniff conducted from the front porch of a home after law enforcement received a tip that marijuana was being grown inside. Jardines at 1413. The Court granted certiorari to consider "the question of whether the officers' behavior was a search

---

[3] The government produced Exhibit B, Officer Malcom Miller's January 21, 2013 police report in discovery at bates REPORTS-DOCUMENTS-0080-82.

3

within the meaning of the Fourth Amendment." Id. at 1414.  The Court held the search was unreasonable with the following straightforward analysis:

> "The officers were gathering information in an area belonging to [the defendant] and immediately surrounding his house—in the curtilage of the house, which we have held enjoys protection as part of the home itself. And they gathered that information by physically entering and occupying the area to engage in conduct not explicitly or implicitly permitted by the homeowner.

Florida v. Jardines, 133 S. Ct. at 1414.

Prior to the common-law trespass test revived by Jones, in United States v. Dunn, 480 U.S. 294 (1987), the Supreme Court set out "four non-exhaustive factors to determine whether an area is part of a home's curtilage: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by."  United States v. Perea-Rey, 680 F.3d 1179, 1184 (9th Cir. 2012) (internal quotations omitted, quoting United States v. Dunn, 480 U.S. 294, 307 (1987)); see also United States v. Struckman, 603 F.3d 731, 739 (9th Cir. 2010).

## A. Fenced in Areas Are Constitutionally Protected

In United States v. Struckman, 603 F.3d 731(9th Cir. 2010), a woman called police and reported the defendant had thrown a backpack over a fence and then climbed over the fence into her neighbor's back yard.  United States v. Struckman, 603 F.3d 731, 736 (9th Cir. 2010).   The woman stated her neighbors were not home.  Although could not see what the defendant was doing, she indicated to police her suspicion that the man was trying to break into her neighbor's house.  Id.  Officers arrived to investigate.  Because the back yard was surrounded by a six foot tall fence, one officer "climbed atop an object positioned next to the gate to get a better view while [the other officer] peeked into the yard through a small hole in the fence."  Id.  The officers saw the defendant in the back yard who matched the description given by the woman.  Id.  Entering the back yard, the

4

officers handcuffed the defendant, searched him, and discovered a handgun magazine on his person and a firearm in his backpack. Officers then determined that the defendant was on probation, but that he also lived at the house. Id. at 737. After being indicted on one count of being a felon in possession of a firearm, the defendant moved to suppress and the district court denied the motion. Id.

The Ninth Circuit reversed. Struckman, 603 F.3d at 747. The government argued the officers had probable cause and that exigent circumstances excused the warrantless arrest and entry into the defendant's backyard. The Ninth Circuit held that the defendant's "backyard—a small, enclosed yard adjacent to a home in a residential neighborhood—is unquestionably such a clearly marked area to which the activity of home life extends, and so is curtilage subject to Fourth Amendment protection." Id. at 739.

Unlike Struckman where the police were responding to an urgent 911 call of a potential burglary in process, Karsseboom was on his way home after a Warriors game and was conveniently following up on information other officers had received earlier. PX TX at p. 5. There was no urgency justifying his warrantless intrusion.

**B. Car Ports Viewable From The Street Are Constitutionally Protected**

In United States v. Perea-Rey, 680 F.3d 1179, 1184 (9th Cir. 2012), the Ninth Circuit reversed a district court's partial denial of a motion to suppress and held that a carport was part of a home's curtilage. The district court had suppressed the material found in an unwarranted search conducted inside the home, but denied the motion as to the evidence found in the carport believing there was no reasonable expectation of privacy because the carport could be observed from the sidewalk. Id. at 1183.

In Parea-Rey, a border patrol agent followed a man who had jumped the United States-Mexico border fence to the defendant's home. Id. at 1182. The agent watched the man enter the front yard of the home through one of two gates (the gate in front of the carport was closed). The

5

man knocked on the front door, defendant answered, and the agent saw defendant gesture towards the carport. The agent could not see into the carport from his location. The man walked along the front of the house, around the corner and into the carport, and the agent followed him past the front door and into the carport. In the carport, the agent confronted the defendant and the man he followed, identifying himself as a border patrol agent. Id. at 1183. After detaining the defendant and the other man until backup arrived, from within the carport, the agent knocked on the side door, identified himself as a border patrol agent and commanded everyone to come out of the house. Additional undocumented men came out of the home and a search of the home revealed an additional undocumented alien. Id.

The Ninth Circuit began its analysis quoting Jones, *supra*, stating "Where the government physically occupie[s] private property for the purpose of obtaining information, that is a 'search' within the meaning of the Fourth Amendment." Perea-Rey, 680 F.3d at 1184 (internal quotations omitted). Instead of stopping there, as it could have relying on Jones, the Ninth Circuit also examined the Dunn factors, noting that "these factors do not yield a definite answer; rather they guide [us] in determining whether the area is so intimately connected to the home that it should fall under the umbrella of the Fourth Amendment's protections." Id. (quoting United States v. Johnson, 256 F.3d 895, 911 (9th Cir. 2001). On the first Dunn factor, the Court found the carport "more than satisfie[d] the proximity factor" as it was immediately adjacent to the home. The Court found the carport also satisfied the second "enclosure factor." In addition to the walls and roof, the carport was "further enclosed by a wrought iron fence that surrounds the property." Id. Regarding the fence, the Court found that

> The fence also encloses the driveway entrance to the carport. The fence is five to ten feet from the front of the house and allows a relatively unobstructed view of the front of the home. There are two gates in the fence: a small gate in front of the main door to the house, and a larger gate across the front of the driveway. On the day of [defendant's] arrest, the driveway gate was closed, blocking passersby from entering the driveway and carport.

6

Id. at 1184-85.  Regarding the third Dunn factor, the Court found the defendant used the carport to store two pickup trucks, automotive tools, a hand truck and building supplies.  Id. at 1185.  With respect to the fourth Dunn factor, the Court found the defendant "went to some measure to protect the carport from observation from beyond the fence line."  Even though "the fence [did] not fully obscure the carport, its interior [was] only readily observed from a position inside the fence line."  Id.  The Court held the Dunn factors also indicated that the defendant's Fourth Amendment rights were violated when the agents searched the curtilage of the defendant's home and when they entered the carport.  Id.

The Ninth Circuit explained that Fourth Amendment Protection of areas associated with, but outside the home "is rooted in the protection of private property rights."  Perea-Rey, 680 F.3d at 1185 (citing Jones, supra, 132 S.Ct. at 949).  The Ninth Circuit held that previous cases focusing only on a reasonable expectation of privacy had been in error because they had discarded the trespassory analysis revitalized by Jones.  Id. at 1185.  As an example, the Ninth Circuit cited its decision in United States v. Pineda–Moreno, 591 F.3d 1212 (9th Cir. 2010), which the Supreme Court vacated and remanded in light of United States v. Jones.  Pineda-Moreno v. United States, 132 S.Ct. 1533 (2012).  In Pineda-Moreno, the Ninth Circuit had previously and erroneously held that no Fourth Amendment violation occurred when agents entered a driveway to place a tracking device on a car because the defendant had no reasonable expectation of privacy in the curtilage.  The Ninth Circuit stated "the Supreme Court recently and emphatically repudiated this reasoning, explaining that 'as we have discussed, the *Katz* reasonable-expectation-of-privacy test has been *added to,* not *substituted for,* the common-law trespassory test.' "  Perea-Rey, 680 F.3d at 1186 (quoting Jones, 132 S.Ct. at 952).

**C. Karsseboom's Trespass Into The Gated Area Behind 1759 Seminary Avenue Was A Constitutional Violation Even Under The Dunn Factors.**

Just as the Ninth Circuit in Parea-Rey applied the Dunn factors and held the search there was unconstitutional, an analysis of the Dunn factors shows the search here was a trespassory violation of

7

the defendants' curtilage.  The gated and enclosed parking area behind 1759 Seminary Avenue is an extension of the apartments themselves, and the Dunn factors confirm it is curtilage protected by the Fourth Amendment.  Moreover, Karssebooms, entry through the closed and posted gate by following another resident was unquestionably a trespass

**1.  The Proximity Of The Area To The Home**

Like the carport in Parea-Rey, the gated and enclosed parking area is immediately adjacent to the apartments. See Parea-Rey at 1184.  There are no public walkways, sidewalks, access points or other fences between the apartments and the parking area. C.f. Dunn, supra, 480 U.S. at 302 (barn determined not to be curtilage was 180 feet away and outside the perimeter fencing that surrounded only the house).  The enclosed concrete parking area here in East Oakland is similar to the backyard protected in Struckman, because the parking area is entirely enclosed and adjacent to the apartments.  Moreover, the signs forbidding in intrusion at 1759 Seminary show additional steps to protect the residents' privacy interest here that were not taken in Struckman.

**2.  Whether The Area Is Included Within An Enclosure Surrounding The Home**

The parking area lies within walls and fencing that entirely encloses the 1759 Seminary apartment complex.  At the rear, walls surround three sides of the complex, enclosing the sides and rear of the property.  Wrought iron fences and walls completely isolate 1759 Seminary from adjoining properties.   As in Parea-Rey, a wrought iron fence runs across the front of the property, protecting the property from pedestrians on the street.  See Parea-Rey at 1184.  Just as in Parea-Rey, the wrought iron fence here has two entrances – a pedestrian gate and a gate across the driveway.  Id. at 1185.  As in Parea-Rey, the gate protecting the driveway to 1759 Seminary was closed.  Id. Making the intrusion here even worse than the intrusion in Parea-Rey, when Karsseboom first approached 1759 Seminary, he testified he "saw that the front gate or drive-in gate was closed; " PX

8

TX p. 13; and Karsseboom told another officer, Malcolm Miller, "he was looking for another way into this address" because the "the front gate was locked." Exhibit B, p. 1.

### 3. The Nature Of The Uses To Which The Area Is Put

The parking area here is just like the Parea-Rey carport. There, the carport housed two pickup trucks, automotive tools, a hand truck, and building supplies. Parea-Rey at 1185. Here, residents of 1759 Seminary Avenue used their locked parking area to protect their cars from the unfortunate high incidences of car clouting in East Oakland; See http://spotcrime.com/ca/oakland; by parking their cars in the secure, gated parking area behind their apartments.

### 4. The Steps Taken To Protect The Area From Observation By People Passing By

In Parea-Rey, the Court found that "while the fence does not fully obscure the carport, its interior is only readily observed from a position inside the fence line." Parea-Rey at 1185. Attached here are the exhibits upon which the Court in Parea-Rey relied. Exhibits C through E.

As the photos of the front of 1759 Seminary demonstrate, attached as Exhibits F through I, the parking area behind 1759 Seminary is not visible from the street, unlike the carport in Parea-Rey. Here, the gate in front of the apartment completely protects the parking area from observation because there is no angle from which a pedestrian can view the parking area down the driveway on the east side of the building. On the west side of the building, an entry way that extends out from the building blocks the view from the street. A wrought iron fence separates a portion of the parcel from the neighboring apartment building to the west, but a solid fence wall begins at beginning of the parking area behind 1759 Seminary which obscures visibility.

Moreover, while some of the parking area is visible from the street or through the wrought iron fence, the carport in Parea-Rey was more visible than the parking area behind 1759 Seminary. The car which Karsseboom hoped to locate was clearly *not* visible from the street, otherwise he

9

would not have needed to trespass in order to view it.

### 5. The Ability To Observe Or Sharing Of Property Does Not Vitiate Fourth Amendment Protection

As the Court in Parea-Rey made clear, cases in which courts have applied the Katz test to deny Fourth Amendment protection to property tied to the home are incorrectly decided. Parea-Rey, supra, 680 F.3d at 1185-86. "The Katz expectation of privacy test *extends* the traditional reach of the Fourth Amendment . . ." United States v. Duenas, 691 F.3d 1070, 1080 (9th Cir. 2012) (emphasis added). "Katz did not narrow the Fourth Amendment's scope." Id. quoting Jones, supra, 132 S.Ct. at 951. Constitutionally protected curtilage does not lose protection against trespass by applying Katz's reasonable expectation of privacy test.

Certainly the government will argue that an apartment in East Oakland is different than a single family home in Piedmont, but as the Supreme Court indicated in Ross, supra, 456 U.S. at 822, the rich and the poor should enjoy the same Fourth Amendment protections. More recently, this concern between differential protections for the rich and the poor was discussed by Judges, Kozinski, Reinhardt, Wardlaw, Paez, and Berzon, who joined in dissenting from the denial of rehearing *en banc* in United States v. Pineda-Moreno, 617 F.3d 1120 (9th Cir. 2010), discussed above. These dissenting judges noted:

> The very rich will still be able to protect their privacy with the aid of electric gates, tall fences, security booths, remote cameras, motion sensors and roving patrols, but the vast majority of the 60 million people living in the Ninth Circuit will see their privacy materially diminished by the panel's ruling. Open driveways, unenclosed porches, basement doors left unlocked, back doors left ajar, yard gates left unlatched, garage doors that don't quite close, ladders propped up under an open window will all be considered invitations for police to sneak in on the theory that a neighborhood child might, in which case, the homeowner "would have no grounds to complain."

United States v. Pineda-Moreno, 617 F.3d 1120, 1123 (9th Cir. 2010). The Supreme Court agreed with the dissent in Pineda-Moreno and vacated the panel opinion. See Pineda-Moreno v. United

10

States, supra, 132 S.Ct. 1533 (2012).

Although the parking area here was shared by all the residents of the complex, the Supreme Court provided a framework for constitutionally acceptable warrantless searches of shared property in United States v. Matlock, 415 U.S. 164 (1974), and held that an intrusion into shared property requires consent of one of the parties sharing the property. There is no such consent here. In Matlock, the Court held that "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." United States v. Matlock, 415 U.S. 164, 170 (1974). In Matlock, the Court held a woman cohabitating and sharing a bedroom with the defendant could consent to a search of the bedroom. The Court in Matlock did not apply the previously established Katz test to automatically divest mutual property users of their Fourth Amendment protections. Rather, the Court found that mutual use of property by persons generally having joint access or control makes it "[r]easonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have *assumed the risk* that one of their number might permit the common area to be searched." Matlock, 415 U.S. at 171, fn 7 (emphasis added).

Living in an apartment building does not vitiate Fourth Amendment protection in the shared portions of the property simply because other residents mutually use or have common authority over those areas. Instead, as the Court explained in Matlock, apartment residents "have assumed the risk that one of their [neighbors] might permit the common area to be searched." See Matlock, 415 U.S. at 171, fn 7. Here, there was no consent by another apartment resident and the search was an unwarranted, unconsented, trespass.

## II. THE OFFICER'S OBSERVATIONS WERE NOT MADE FROM A LOCATION WHICH THE PUBLIC HAD AN IMPLIED LICENSE TO OCCUPY

While Perea-Rey involved a physical trespass by the agents, the Ninth Circuit commented,

11

"a warrant is not required to observe readily visible items within the curtilage, and 'officers [need not] shield their eyes when passing by a home on public thoroughfares." Perea-Rey, 680 F.3d at 1186. The Ninth Circuit distinguished between what law enforcement may see from a public vantage point, such as a sidewalk, and law enforcement's ability to enter that visible space. Id. "[T]he ability to observe part of the curtilage or the interior of a home does not authorize law enforcement, without a warrant, to then enter those areas to conduct searches or seizures." Id. The Parea-Rey Court rejected a government argument that "so-called 'knock and talk' exception to the warrant requirement [would have justified the agent's] incursion into the curtilage." Id. at 1187. In doing so, the Ninth Circuit noted "the Supreme Court has unequivocally disallowed reliance on the good faith or subjective beliefs of officers as part of the analysis of whether they violated the Fourth Amendment." Id. (citing *See* Kentucky v. King, 131 S.Ct. 1849, 1859 (2011)). "Accordingly, we can no longer rely on the good faith belief of law enforcement officers in our analysis of whether an incursion into the curtilage for a knock and talk violates the Fourth Amendment." Id. Therefore, the Court held "it remains permissible for officers to approach a home to contact the inhabitants. The constitutionality of such entries into the curtilage hinges on whether the officer's actions are consistent with an attempt to initiate consensual contact with the occupants of the home." Id. at 1187-88.

In Parea-Rey, the Court found the agent "did not enter the yard and knock on the front door to initiate a consensual contact with [the defendant]." Id. at 1188. The agent "admitted at the evidentiary hearing that, as in this case, he was not invited into the carport, but that he simply followed a man onto the property, bypassing the front door and walking around the side of the house into the carport." Id. The Ninth Circuit held it was not objectively reasonable as part of a knock and talk for the agent to bypass the front door and intrude into an area where uninvited visitors would not be expected to appear. Id. Here, Karsseboom came upon a locked gate and began an investigation of an object, a car, which is what he came looking for. This intrusions was

even greater than the claimed knock and talk in Parea-Rey. It was an intrusive and trespassory directed search, precisely the type of conduct the Fourth Amendment is designed to protect against.

Whether viewed objectively or subjectively, Karsseboom's purpose was to conduct a search. Objectively, Karsseboom did not enter the property through the pedestrian gate and proceed to the apartment in order to seek consent for his search or to ask residents about the vehicle he was attempting to locate. Rather, Karsseboom waited until the gate to the driveway had been opened, then he followed another car down a 200 foot driveway. Subjectively, Karsseboom admitted in testimony that his purpose was to conduct a search and locate a vehicle. Moreover, he was not there to talk to residents or seek consent, as Karsseboom testified he had several reasons for remaining undercover and not identifying himself as an officer:

> Q: Why didn't you identify yourself as a police officer at this point?
> A. Several reasons. One is it would have possibly hindered the investigation going to the shooting, since I was looking for the vehicle that was used in the shooting. Two, it initially is not a good idea to identify as a police officer because you don't know what people's reactions are at that point.

PX TX at p. 022.

Viewed both subjectively and objectively, Karsseboom had no implied license to enter the property. He had no intent to visit anybody on the property or in the apartments. Karsseboom did not enter the 1759 Seminary parcel and head into the apartments to speak with any residents or seek their consent to search. Karsseboom was simply a trespasser.

## III. THE GOVERNMENT MAY NOT CLAIM GOOD FAITH BECAUESE JONES & PAREA-REY PREDATED THE TRESPASS AND SEARCH HERE.

In Davis v. United States, 131 S.Ct. 2419 (2011), the Supreme Court held that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." 131 S.Ct. at 2423–24. However, the Ninth Circuit decided both United States v.

Jones, 132 S.Ct. 945 (2012), and United States v. Perea-Rey, 680 F.3d 1179 (9th Cir. 2012), well before Karsseboom trespassed and searched the secure parking lot in the rear of 1759 Seminary Ave.

Cases like United States v. Nohara, 3 F.3d 1239 (9th Cir. 1993), and the vacated United States v. Pineda-Moreno, 591 F.3d 1212 (9th Cir. 2010), which focus on the reasonable expectation of privacy and ignore the trespassory intrusion, cannot support a claim of good faith here, particularly since the Supreme Court vacated and remanded United States v. Pineda-Moreno in light of the revitalized concept of trespass in Jones. Pineda-Moreno v. United States, 132 S.Ct. 1533 (2012). The question is not the ease of the trespass. The question is whether there was a trespass. Here, there is no question there was a trespass and that trespass requires suppression of all items seized and observations made following that trespass.

Dated: February 6, 2015                     Respectfully submitted,

                                            /s/
                                            Christopher J. Cannon
                                            Matthew A. Laws
                                            Attorneys for Deante Kincaid

                                            On Behalf of All Defendants

14