BOERSCH SHAPIRO LLP
Martha Boersch (CA State Bar No. 126569)
mboersch@boerschshapiro.com
235 Montgomery Street, Suite 835
San Francisco, CA 94104
Telephone: (415) 500-6640

Attorney for Defendant
PURVIS ELLIS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PURVIS LAMAR ELLIS, DEANTE TERRANCE KINCAID, DAMIEN EDWARD MCDANIEL, and JOSEPH PENNYMON<br><br>Defendant. | Case No. CR13-00818 PJH<br><br>**MOTION TO SUPPRESS EVIDENCE FROM ILLEGAL SEARCH AND FOR *FRANKS* HEARING**<br><br>Hearing Date:  May 13, 2015<br><br>Hearing Time:  1:30 p.m.<br><br>Trial Date:  TBD |

TO:    UNITED STATES OF AMERICA, PLAINTIFF; AND MELINDA HAAG, UNITED STATES ATTORNEY; AND JOSEPH ALIOTO, ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that on May 13, 2015 at 1:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Phyllis Hamilton, United States District Judge, all defendants, by and through undersigned counsel of record for Purvis Ellis, will move this Honorable Court for an order suppressing all evidence seized during the search of 1759 Seminary Avenue, Apartment 212, in Oakland, CA, as well as all fruits of that search, and a *Franks* hearing regarding the same.  This motion is based upon the Fourth Amendment to the United States Constitution, the attached Memorandum of Points and Authorities, the Declaration, all files and records in this case, and any further evidence as may be adduced at the hearing on this Motion.

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ..............................................................................................2

    I.    THE EVENTS ON JANUARY 21 and 22, 2013 .........................................2

    II.    THE SEARCH WARRANT AFFIDAVIT ....................................................5

LEGAL STANDARD ..........................................................................................................6

ARGUMENT .......................................................................................................................7

    I.    THE WARRANT AFFIDAVIT FAILED TO ESTABLISH PROBABLE CAUSE THAT EVIDENCE OF CRIMINALITY WOULD BE FOUND IN APARTMENT 212 ...............................................................................................................7

    II.    THE WARRANT FAILED TO ESTABLISH PROBABLE CAUSE TO SEARCH APARTMENT 212 BECAUSE IT RELIED EXCLUSIVELY ON AN INFORMANT'S TIP THAT WAS NOT SUFFICIENTLY RELIABLE ......................7

        A.    The Affidavit For The Search Warrant Relied Exclusively on Information From Confidential Informant ..................................................................8

        B.    Information Provided by The Informant Was Not Sufficiently Reliable ...........8

        C.    The Informant Lacked the Necessary Basis of Knowledge ..............................10

    III.    THE WARRANT AFFIDAVIT CONTAINED MATERIAL OMISSIONS THAT FURTHER UNDERMINE A FINDING OF PROBABLE CAUSE AND, AT THE VERY LEAST, JUSTIFY A FRANKS HEARING ......................................................12

    IV.    THE WARRANT AND THE WARRANT AFFIDAVIT ARE OVERBROAD AND LACK PARTICULARITY ..............................................................................14

    V.    THE GOOD-FAITH EXCEPTION TO THE EXCLUSIONARY RULE DOES NOT APPLY ..........................................................................................................18

CONCLUSION ...................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Alabama v. White*,
  496 U.S. 325 (1990) ...................................................................................................10

*Center Art Galleries-Hawaii, Inc. v. United States*,
  875 F.2d 747 (9th Cir. 1989) .....................................................................................17

*Franks v. Delaware*,
  438 U.S. 154 (1978) ...........................................................................................12, 18

*Groh v. Ramirez*,
  540 U.S. 551 (2004) ...................................................................................................14

*Illinois v. Gates*,
  462 U.S. 213 (1983) ................................................................................................6, 9

*Marron v. United States*,
  275 U.S. 192 (1927) ...................................................................................................14

*Motley v. Parks*,
  432 F.3d 1072 (9th Cir. 2005) ...................................................................................13

*United States v. Angulo—Lopez*,
  791 F.2d 1394 (9th Cir.1986) ....................................................................................10

*United States v. Bell*,
  585 F.3d 1045 (7th Cir. 2009) ...................................................................................12

*United States v. Bishop*,
  264 F.3d 919 (9th Cir. 2001) .......................................................................................8

*United States v. Cardwell*,
  680 F.2d 75 (9th Cir. 1982) ...........................................................................14, 15, 16

*United States v. Chavez-Miranda*,
  306 F.3d 973 (9th Cir. 2002) .......................................................................................7

*United States v. Cioffi*,
  668 F. Supp. 2d 385 (E.D.N.Y. 2009) .......................................................................17

*United States v. Clark*,
  31 F.3d 831 (9th Cir. 1994) .............................................................................14, 15, 16, 17

*United States v. Crews*,
  502 F.3d 1130 (9th Cir. 2007) .....................................................................................7

*United States v. Crozier*,
  777 F.2d 1376 (9th Cir. 1985) .........................................................................15, 16, 17

*United States v. DeLeon*,
  979 F.2d 761 (9th Cir. 1992) ......................................................................................12

*United States v. Elliott*,
  322 F.3d 710 (9th Cir. Or. 2003) ...............................................................................10

*United States v. Embry*,
  CR 14-21, 2014 U.S. Dist. LEXIS 63292 (D. Mont. May 7, 2014).................6, 9, 10, 11

*United States v. Ford*,
  184 F.3d 566 (6th Cir. 1999) ......................................................................................15

*United States v. Hill*,
  459 F.3d 966 (9th Cir.2006) .......................................................................................14

MOTION TO SUPPRESS EVIDENCE FROM
ILLEGAL SEARCH AND FOR FRANKS HEARING
Case No. CR13-00818 PJH

*United States v. Hove*,
848 F.2d 137 (9th Cir. 1988)...................................................................................19

*United States v. Howell*,
231 F.3d 615 (9th Cir. 2000)...................................................................................13

*United States v. Kow*,
58 F.3d 423 (9th Cir. 1995).........................................................................15, 17, 18

*United States v. Leon*,
468 U.S. 897 (1984) ....................................................................................17, 18, 19

*United States v. Luong*,
470 F.3d 898 (9th Cir. 2006)..........................................................................6, 18, 19

*United States v. Martinez-Garcia*,
397 F.3d 1205 (9th Cir. 2005).................................................................................9

*United States v. Morales*,
252 F.3d 1070 (9th Cir. 2001).................................................................................10

*United States v. Reeves*,
210 F.3d 1041 (9th Cir. 2000)...........................................................................10, 11

*United States v. Rubio*,
727 F.2d 786 (9th Cir. 1983)...................................................................................6

*United States v. Schesso*,
842 F.Supp.2d 1292 (W.D. WA. 2011)....................................................................14

*United States v. Spilotro*,
800 F.2d 959 (9th Cir. 1986)...........................................................................14, 17

*United States v. Stanert*,
762 F.2d 775 (9th Cir. 1985)...................................................................................12

*United States v. Stubbs*,
873 F.2d 210 (9th Cir. 1989)...................................................................................17

*United States v. Walczak*,
783 F.2d 852 (9th Cir. 1986)...................................................................................13

*United States v. Washington*,
797 F.2d 1461 (9th Cir. 1986)...................................................................................6

*United States v. Weber*,
923 F.2d 1338 (9th Cir. 1990)...................................................................................11

*United States v. Yost*,
2:07-cr-00145, 2009 U.S. Dist. LEXIS 58088 (D. Nev. Mar. 26, 2009) .....................13

*United States v. Young*,
CR-09-081, 2010 U.S. Dist. LEXIS 22035 (C.D. Cal. Feb. 18, 2010) ..........................11

**Statutes**

Federal Rule of Criminal Procedure 41 ...........................................................................6

United States Constitution, Fourth Amendment...............................................................16

MOTION TO SUPPRESS EVIDENCE FROM
ILLEGAL SEARCH AND FOR FRANKS HEARING
Case No. CR13-00818 PJH

1

## **INTRODUCTION**

2        Defendants bring this motion to suppress all evidence seized from apartment 212 of 1759

3  Seminary Avenue, Oakland, CA, pursuant to an unfiled state search warrant.  The affidavit in support

4  of that search warrant failed to establish probable cause to search apartment 212 because it lacked any

5  information that Mr. Ellis had committed a criminal offense or that evidence of criminal activity

6  would be found in apartment 212.  Moreover, the only information in the affidavit of any substance

7  was uncorroborated information received from an unreliable informant.   And perhaps most troubling,

8  the affidavit omitted material information about an alleged probation search, misleading the state court

9  judge to sign the warrant.  Finally, the warrant was overbroad.

10        In January 2013, defendant Purvis Ellis was arrested and charged by the Alameda County

11  District Attorney's office with being a felon in possession of a firearm after several guns, including

12  two allegedly belonging to a police officer who had been shot in the wrist, were recovered from

13  apartment 212, 1759 Seminary Avenue, Oakland, where the Oakland Police Department ("OPD")

14  claimed Mr. Ellis resided.  The three co-defendants in the instant federal case were charged in a

15  separate state case by the D.A. in connection with the shooting of the officer.  In May 2013, after

16  then-counsel for Mr. Ellis demanded that the State produce the affidavit for the search warrant for

17  apartment 212, the D.A. dropped all charges against Mr. Ellis and he was released from custody.

18  Seven months later, in December 2013, the federal government indicted Mr. Ellis and the three co-

19  defendants on RICO charges, using the January 2013 shooting as one of the predicate offenses and

20  alleging that the defendants were part of an Oakland gang the prosecution calls "Sem City."

21        In December 2014, a year after Mr. Ellis and the co-defendants were indicted, the prosecution

22  produced the (heavily redacted) search warrant affidavits that OPD had obtained for several

23  apartments at 1759 Seminary Avenue, including apartment 212, two cars, and a Ramey warrant for

24  Mr. Ellis's arrest.  Each of those affidavits is fundamentally flawed, but this motion focuses on the

25  affidavit in support of a warrant to search apartment 212.  For the reasons more fully discussed below,

26  Mr. Ellis respectfully requests that the Court issue an order suppressing all evidence found in

27  apartment 212, as well as all fruits of that unlawful search.

28  / / /

# FACTUAL BACKGROUND[1]

## I.      THE EVENTS ON JANUARY 21 and 22, 2013

On January 21, 2013, Oakland Police Department ("OPD") Officer Eric Karsseboom worked an apparently off-duty security detail at a Golden State Warriors basketball game.  Around 5:00 p.m., he claims to have received a text from a lieutenant at OPD indicating that OPD had received information that a car that had been used in a shooting the previous day was parked at an apartment complex located at 1759 Seminary Avenue in Oakland.  At approximately 6:15 p.m., Officer Karsseboom drove, without permission, consent, or a search warrant, down the private, gated driveway of the apartment complex located at 1759 Seminary Ave., Oakland, CA, and into the rear parking area of the building.  Officer Karsseboom appeared to be off-duty, was not wearing a police uniform or driving a marked police car, and instead was driving a Chevy Tahoe suburban that he personally had rented.

Officer Karsseboom turned his car around in the parking area and drove back down the driveway of the apartment building towards Seminary Ave., only to discover that a gate was about to be closed across the entrance of the private driveway.    Officer Karsseboom was then allegedly confronted by one or more individuals who demanded to know who he was and what he was doing there on private property.  Officer Karsseboom allegedly told the individual(s) that he was "looking for a female."  The individual(s) apparently did not believe Officer Karsseboom, and, after they saw a firearm sitting within reach of Officer Karsseboom, the conversation escalated into a physical altercation during which Officer Karsseboom claimed to have been hit in the head and shot in his left wrist before the individual(s) fled.  According to Officer Karsseboom, he did not identify himself as a police officer until after he had been shot.  During the struggle, the suspects are alleged to have taken two pistols from Officer Karsseboom.  Immediately after Officer Karsseboom was shot, the apartment building was surrounded by OPD, and remained that way the entire night of January 21 and the morning of January 22.

---

[1] The factual allegations set forth herein are derived primarily from police reports.  By reciting those allegations here, Mr. Ellis does not concede the truth or accuracy of any of those facts, and indeed he does and will dispute the truth and accuracy of such factual allegations.

Although Officer Karsseboom claimed that after several days he was able to identify three suspects as the individuals involved in the altercation, Mr. Ellis was not identified as one of those suspects, despite the fact that Officer Karsseboom was shown a photolineup that included a picture of Mr. Ellis.[2]  Eventually, OPD prepared a single search warrant for three apartments at 1759 Seminary Avenue:  apartments 212, 108, and 110.  Ex. A [search warrant affidavit [Reports-Documents ("RD") 003408-003411]].[3]  The search warrant was allegedly signed by a state court judge at 1:05 a.m. on January 22, 2013.  *Id.*

Early in the morning of January 22, 2013, OPD claims to have discovered Officer Karsseboom's two pistols, as well as a third pistol with Karsseboom's and someone else's blood and DNA on it, in apartment 212.  The timing of the actual entry into and search of apartment 212 is impossible to determine based on the police reports, as different reports from different officers contain conflicting information.  For example, according to one member of the OPD SWAT team, apartment 212 was entered and searched at 2:25 a.m. after OPD shot gas grenades into the apartment and sent in a robot at 2:08 a.m.   That report does not indicate that any guns were found after OPD entered apartment 212.

That timeline conflicts with a report by Officer Eric Milina, who claims to have received the search warrant for apartment 212 at 3:35 a.m. and searched the apartment himself at that time.  Strikingly, Officer Milina's report, in a section titled "Evidence collected by me in the apartment [212]," does *not* indicate that *any* firearms were recovered in apartment 212.  Moreover, it states that only two officers were involved in the search, while other discovery produced during the state court proceedings lists three officers as being involved.  Further, according to metadata from photographs taken by OPD inside apartment 212, photographs of the three guns that allegedly were discovered in the apartment were taken at approximately 3:30 a.m. on January 22.  Those photographs demonstrate that OPD moved the guns around as they were taking pictures of them.

---

[2] The decision by OPD to show Officer Karsseboom a photolineup that included Mr. Ellis is puzzling, given that Mr. Ellis did not match the description, provided by Officer Karsseboom, of any of the suspects.

[3] References to page numbers in the exhibits refer to the Bates-stamped page numbers at the bottom right corner of each page.

OPD Technician J. Jaecksch, who was tasked with processing the evidence at the scene, was asked by OPD Sergeant Fleming at approximately 4:25 a.m. to go to apartment 212 in order to photograph and recover firearms that allegedly were found there.  As Technician Jaecksch approached apartment 212, Officer Milina exited apartment 212 and allegedly told Technician Jaecksch that he (Milina) had already photographed and collected all the evidence in the apartment.  That timing, however, is contradicted by another report in which Jaecksch is claimed to have taken possession of the three firearms allegedly found in Apartment 212 as early as 3:25 a.m. on January 22, 2013.  That in turn conflicts with another report by Jaecksch in which it is claimed that at 4:37 a.m., Officer Milina came to Jaecksch's car and gave her the three guns allegedly recovered in apartment 212.

All of the timelines above conflict with the report by Sergeant Randolph Brandwood, who was the lead investigator and assigned as the call-out team sergeant for Major Crimes Section that night. He claims that he did not order OPD SWAT and other officers, including Officer Milina, to enter and search apartment 212 (and the other apartments listed on the warrant) until 5:38 a.m.  At that time, according to Sergeant Brandwood, the guns were discovered.  This timeline appears to be corroborated by a report by Sergeant Riley, who indicated that the apartment was clear to search at 5:24 a.m. and that the search began at 5:38 a.m.

Even more puzzling than the contradictions cited above, certain discovery provided to Mr. Ellis during the state court proceedings – but *not* provided to him by the prosecution in the instant case – states that the three guns were actually recovered during a *probation search* of Apartment 212 on January *21*, 2013, *i.e.*, the day before OPD claims it first entered Apartment 212.  Ex. B [probation revocation report].

At some time the morning of January 22, 2013, Mr. Ellis and several other individuals walked out of apartment 112 at 1759 Seminary Avenue and were detained by OPD.  Mr. Ellis was charged by the Alameda County District Attorney with possession of the firearms that were allegedly seized from Apartment 212.  Then-counsel for Mr. Ellis made repeated requests for the search warrant affidavits, especially those relating to the search warrant for the apartments at 1759 Seminary and the Ramey Warrant for the arrest of Mr. Ellis.  After the District Attorney's office refused to provide the affidavits, then-counsel for Mr. Ellis filed a motion, on or about March 19, 2013, demanding the

1  affidavits. In a declaration attached to the motion, then-counsel for Mr. Ellis stated that he believed

2  that the affidavits for both the Ramey warrant and the search warrants contained false information.

3  The affidavits were never provided, and the District Attorney's office instead dropped all charges

4  against Mr. Ellis. In December 2013, Mr. Ellis was indicted along with the three co-defendants in the

5  present case by the federal government. (Doc. 1.)

6  ## II.    THE SEARCH WARRANT AFFIDAVIT

7          The search warrant affidavits for the various search warrants were finally provided to the

8  defense in December 2014, a year after the indictment. The affidavits are heavily redacted. The

9  affidavit in support of the warrant for apartment 212 (and the other apartments) was based solely on

10  information received by OPD from a confidential informant. Specifically, the search warrant affidavit

11  provides, in part, the following:

12          Officer S. Valle received information from a confidential reliable informant
        that will be referred to as X in this affidavit. X told Officer Valle the
13          following information regarding to [sic] attempt murder of Officer
        [REDACTED]. X advised Officer Valle that shortly after the shooting, X
14          received a phone call [REDACTED] "Tay "Tay" and "Lil' Dame" just shot
        someone in the driveway of the apartment complex. Officer Valle told your
15          affiant that Officer Valle knows "Tay Tay" to be the street moniker for
        Deante Kincaid and "Lil' Dame" to be the street moniker for Damien
16          McDaniel. [REDACTED] "Lil' Joe" and "B.O.T." were also in the driveway
        when the shooting happened. Officer Valle told your affiant that Valle knows
17          "B.O.T." to be Purvis Ellis.
18
        Officer Valle later advised your affiant that X told Officer Valle that
19          [REDACTED]. X told Valle [REDACTED] "Tay Tay" just shot a cop
        [REDACTED] "Lil' Dame got away and fled the area after the shooting.
20          Based on this conversation, Officer Valle told your affiant that Valle believes
        that Deante Kincaid put the gun that was taken from Officer [REDACTED]
21          and the gun that was possibly used to shoot him with [sic] inside Ellis'
        apartment. . . . .
22
        X advised Officer Valle that "Lil' Dame," "B.O.T.," and "Lil' Joe" all live in
23          1759 Seminary Avenue.
24
25  Ex. A at RD 003409 (redactions in original). Among the items to be seized, the search warrant

26  affidavit listed the following:

27          •   Videotapes, magazines, newspaper articles, audio recordings,
            writings or other publishing, computers, computer records, cell
28              phones, cell phone records or other media that may contain real

or simulated acts of violence including but not limited to items pertaining to the attempt to murder documented in this report, Ex. A;

- stolen or embezzled property, Ex. A at RD 003408 [warrant affidavit 003048];

- property or things used as the means of committing a felony, *id.*;

- property or things in the possession of person with the intent to use it as a means of committing a felony . . . , *id.*;

- property or things which consist of an item or constitute evidence which tends to show that a felony has been committed. *Id.*

## **LEGAL STANDARD**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Probable cause exists when, under the totality of the circumstances set forth in the affidavit in support of the warrant, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983). To satisfy this nexus requirement, there must be a fair probability both that a crime has been committed and that evidence of that crime will be present in the location to be searched. *United States v. Washington*, 797 F.2d 1461, 1474 (9th Cir. 1986); *see also United States v. Rubio*, 727 F.2d 786, 793 (9th Cir. 1983) (affidavit must establish probable cause to believe that there is a connection between the evidence sought and the alleged criminal activity). Finally, "all data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath." *United States v. Luong*, 470 F.3d 898, 904 (9th Cir. 2006).

Where, as here, the search is conducted by state law enforcement pursuant to a state warrant, and is not otherwise "federal in character," the warrant need only conform to the requirements of the Federal Constitution, rather than to the procedural requirements of Federal Rule of Criminal Procedure 41. *United States v. Embry*, CR 14-21, 2014 U.S. Dist. LEXIS 63292 (D. Mont. May 7, 2014). In the instant case, the search warrant for apartments 108, 110, and 212 was legally defective for a number of reasons, all of which require suppression of any evidence obtained through the

searches.

## ARGUMENT

### I. THE WARRANT AFFIDAVIT FAILED TO ESTABLISH PROBABLE CAUSE THAT EVIDENCE OF CRIMINALITY WOULD BE FOUND IN APARTMENT 212

The most obvious defect in the warrant affidavit is that it failed to establish probable cause that evidence of criminal activity would be found in apartment 212 because the search warrant affidavit provides no factual nexus between any defendant and apartment 212 (or between any defendant and apartments 108 and 110).  A warrant application must establish a "reasonable nexus between the crime or evidence and the location to be searched." *United States v. Crews*, 502 F.3d 1130, 1136-37 (9th Cir. 2007); *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002) ("When a magistrate judge issues a search warrant for a residence, he must find a 'reasonable nexus' between the contraband sought and the residence.")  No such nexus exists in the affidavit for the warrant to search apartment 212.  Indeed, the affidavit did not allege a single fact connecting Mr. Ellis to apartment 212 and, even more importantly, it did not establish any nexus between Mr. Ellis and the alleged criminal activity.

In the affidavit, the affiant merely states that, based on a conversation that Officer Valle of OPD had with a confidential informant, the contents of which are redacted, Officer Valle "told your affiant that Valle believes that Deante Kincaid put the gun that was taken from Officer [redacted] and the gun that was possible used to shoot him with [sic] inside Ellis' apartment." Ex. A at RD 003409. Nowhere does the affidavit set forth any facts connecting Mr. Ellis to apartment 212, or otherwise provide any factual justification to establish probable cause to search apartment 212 (or either of the other two apartments).  The affidavit therefore failed to establish probable cause to search apartment 212 and the fruits of that search must be suppressed.

### II. THE WARRANT FAILED TO ESTABLISH PROBABLE CAUSE TO SEARCH APARTMENT 212 BECAUSE IT RELIED EXCLUSIVELY ON AN INFORMANT'S TIP THAT WAS NOT SUFFICIENTLY RELIABLE

When a search warrant is based solely on an informant's tip, as it was in the present case, courts determine whether probable cause exists by looking at the totality of the circumstances in assessing whether the tip possesses a sufficient level of reliability and basis of knowledge. *United*

MOTION TO SUPPRESS EVIDENCE FROM
ILLEGAL SEARCH AND FOR FRANKS HEARING
Case No. CR13-00818 PJH

*States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001) (citing *Gates*, 462 U.S. at 238).  The totality of the circumstances demonstrate both that the information provided by the informant was not sufficiently reliable and that the informant lacked an adequate basis of knowledge for the information used by OPD in its attempt to establish probable cause to search apartment 212 and the other apartments.

### A.    The Affidavit For The Search Warrant Relied Exclusively on Information From Confidential Informant

The warrant affidavit for apartment 212 (and the other apartments) was based solely on information received by OPD from a confidential informant.  Specifically, the search warrant affidavit provides, in part, the following:

> Officer S. Valle received information from a confidential reliable informant that will be referred to as X in this affidavit.  X told Officer Valle the following information regarding to [sic] attempt murder of Officer [REDACTED].  X advised Officer Valle that shortly after the shooting, X received a phone call [REDACTED] "Tay "Tay" and "Lil' Dame" just shot someone in the driveway of the apartment complex.  Officer Valle told your affiant that Officer Valle knows "Tay Tay" to be the street moniker for Deante Kincaid and "Lil' Dame" to be the street moniker for Damien McDaniel.  [REDACTED] "Lil' Joe" and "B.O.T." were also in the driveway when the shooting happened.  Officer Valle told your affiant that Valle knows "B.O.T." to be Purvis Ellis.

> Officer Valle later advised your affiant that X told Officer Valle that [REDACTED].  X told Valle [REDACTED] "Tay Tay" just shot a cop [REDACTED] "Lil' Dame got away and fled the area after the shooting.  Based on this conversation, Officer Valle told your affiant that Valle believes that Deante Kincaid put the gun that was taken from Officer [REDACTED] and the gun that was possibly used to shoot him with [sic] inside Ellis' apartment. . . . .

> X advised Officer Valle that "Lil' Dame," "B.O.T.," and "Lil' Joe" all live in 1759 Seminary Avenue.

Ex. A at RD 003409 (redactions in original).  The confidential informant is the source for virtually all of the critical information in the warrant affidavit.

### B.    Information Provided by The Informant Was Not Sufficiently Reliable

With respect to the level of reliability of the information in the warrant application, the informant is the exclusive source of every critical piece of information in the affidavit.  For example, the informant is the only source of information for the alleged fact that "Tay Tay" and "Lil' Dame" shot someone or that "Lil' Joe" and "B.O.T." were in the driveway when the alleged shooting

occurred.  The informant is the only basis for Officer Valle's "belief" that guns would be found in Mr. Ellis' apartment (and there is nothing at all in the affidavit to demonstrate that Ellis's apartment was 212).  None of the information provided by the informant is corroborated by any other sources, and there is nothing – other than OPD's conclusory claim to the contrary – "from which one might conclude that [the informant] is either honest or his information reliable."  *Gates*, 426 U.S. at 225.

The reliability of an informant's information may be demonstrated through independent police corroboration, *Bishop*, 264 F.3d at 925, and the totality-of-the-circumstances analysis recognizes "the value of corroboration of details of an informant's tip by independent police work."  *Gates*, 462 U.S. at 241.  But there is no such corroboration in the present case.

First, there is nothing in the affidavit to suggest that the information provided by the informant was corroborated by independent evidence.  *Embry*, 2014 U.S. Dist. LEXIS 63292, at *24 (tip deemed unreliable, and warrant therefore lacked probable cause, where tip was "completely uncorroborated by independent police observation"); *compare with Gates*, 426 U.S. at 244 (where tip itself did not demonstrate any degree of reliability, Court concluded that tip was reliable under the totality of the circumstances because independent police observation confirmed almost all of the details that the tipster had provided); *Bishop*, 264 F.3d at 926 (deeming tip from informant known to police to be reliable because "there was corroboration through other sources of information sufficient to corroborate the veracity of the informant."); *United States v. Martinez-Garcia*, 397 F.3d 1205, 1216-17 (9th Cir. 2005) (finding totality of the circumstances indicated probable cause where informant's information was bolstered in the search warrant affidavit by independent police investigation of the tip, including an investigation into the drug distribution at defendant's residence, information that the informant had never failed a polygraph test, and that the tip he provided was corroborated by law enforcement observations).

Second, there is nothing in the affidavit to demonstrate that the informant had previously provided reliable information.  Although the affidavit states that the confidential informant is "reliable," there are no facts to support that conclusory statement, and courts require more particularized details to establish an informant's reliability.  *See, e.g., Martinez-Garcia*, 397 F.3d at 1216-17 (search warrant application included information that the informant had never failed a

polygraph test); *United States v. Reeves*, 210 F.3d 1041, 1044-45 (9th Cir. 2000) (in analyzing reliability factor, court noted that informant had provided three prior reliable tips leading to arrests and drug seizures); *United States v. Elliott*, 322 F.3d 710, 716 (9th Cir. Or. 2003) (record of providing six reliable drug-related tips in the preceding three months sufficient to overcome doubts regarding an informant's reliability).

The only information set forth in the search warrant affidavit regarding the informant's history with OPD is a statement that "Officer Valle advised your affiant that he has had several conversations with X regarding 1759 Seminary Avenue over the past few days."  Ex. A at RD 003409.  But rather than evidencing reliability, this statement suggests that Officer's Valle's only experience with the informant was several conversations over several days prior to the shooting.  There is no indication as to whether the informant had provided reliable information in the past, whether the information provided by the informant in the conversations with Officer Valle was subsequently corroborated by OPD, or even whether Officer Valle had known the informant for more than just a few days.

Under the totality of the circumstances, the information provided by the informant lacks sufficient indicia of reliability.

### C.    The Informant Lacked the Necessary Basis of Knowledge

In reviewing the totality of the circumstances, another key factor is the informant's basis of knowledge.  *Bishop*, 264 F.3d at 925; *United States v. Morales*, 252 F.3d 1070, 1074 (9th Cir. 2001) ("informant's veracity, reliability, and basis of knowledge" is "highly relevant" to inquiry) (quoting *Alabama v. White*, 496 U.S. 325, 328 (1990)).  In analyzing this factor courts look for "how the informant came by his or her knowledge."  *Bishop*, 264 F.3d at 925 (quoting *United States v. Angulo—Lopez*, 791 F.2d 1394, 1396 (9th Cir.1986)).  This factor too weighs heavily against finding the informant's statements to be reliable.  Except for the hearsay discussed below, there is no indication in the affidavit – or anywhere else – as to "how or when the informant came to know [his] information."  *Embry*, 2014 U.S. Dist. LEXIS 63292, at *24.  Without any reliable indication as to how the informant learned his information, it is not possible to conclude that the informant had a sufficient basis of knowledge such that the information could be deemed reliable.

The only basis set forth in the affidavit for the informant's knowledge is a "phone call" that the

informant received "shortly after the shooting." Ex. A at RD 003409.  The redacted affidavit provides no clue as to the identity of the caller, the basis for the caller's knowledge of any statements made to the informant, or the reliability of those statements.  *Id.*  The existence and reliance on that double-hearsay only further confirms unreliability of the informant's information.  *Bishop*, 264 F.3d at 925 (informant's tip may be deemed reliable, in part, if based on first-hand knowledge and personal observation rather than hearsay.)

Because the informant's tip lacked any indicia of reliability, any corroboration, or any basis for the informant's knowledge, the information provided by the informant was insufficient to establish probable cause to search apartment 212.  When statements made in an informant's tip are found to be unreliable, probable cause must be analyzed without those statements.  *Embry*, 2014 U.S. Dist. LEXIS 63292, at \*25; *Bishop*, 264 F.3d at 924 ("Once the district court determined that the search warrant included illegally obtained information, it properly purged the affidavit of the offending facts and examined whether the remaining facts still afforded a substantial basis for concluding that the search warrant was supported by probable cause"); *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000).  Absent the information from the informant, the affidavit is wholly devoid of probable cause to search apartment 212.

The only evidence other than the informant's information in the search warrant affidavit to support the apartment searches is a statement by the OPD affiant that, based on his "experience," individuals "who commit crimes such as attempt [sic] murder using firearms and ammunition will commonly store those weapons and ammunition inside of their homes, homes of friends . . . ."  Ex. A at RD 003410.  This statement cannot save the deficient application.  Not only does it lack any information connecting OPD's suspicions to specific apartments, but it constitutes precisely the type of "boilerplate recitations designed to meet all law enforcement needs" disproved of by the Ninth Circuit.  *United States v. Weber*, 923 F.2d 1338, 1345 (9th Cir. 1990).

The search warrant affidavit lacked probable cause, the search of apartment 212 was illegal, and the evidence seized must be suppressed.  *United States v. Young*, CR-09-081, 2010 U.S. Dist. LEXIS 22035, at \*11-12 (C.D. Cal. Feb. 18, 2010) (search warrant failed to establish probable cause because of defects in the affidavit, including that the affidavit failed to provide any information to

1   establish the informant's reliability; failed to indicate whether the informant provided information to

2   law enforcement in the past; failed to give information about the nature of the informant's relationship

3   with the defendant; and the informant did not appear before the issuing judge, which would have

4   given the judge an opportunity to assess his credibility (*citing United States v. Bell*, 585 F.3d 1045,

5   1048 (7th Cir. 2009)).

6   ## III.   THE WARRANT AFFIDAVIT CONTAINED MATERIAL OMISSIONS THAT FURTHER UNDERMINE A FINDING OF PROBABLE CAUSE AND, AT THE VERY LEAST, JUSTIFY A FRANKS HEARING

7

8   The affidavit's failure to establish probable cause is exacerbated by its deliberate and/or

9   reckless omission of material facts.  A defendant is entitled to challenge the validity of a search

10  warrant affidavit if he makes a substantial preliminary showing that (1) the affiant "knowingly and

11  intentionally, or with reckless disregard for the truth" inserted a false or misleading statement in the

12  warrant affidavit, and (2) the affidavit cannot support a finding of probable cause without the

13  allegedly false or misleading information.  *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).  The

14  *Franks* rule applies not only to warrants that contain false or misleading statements, but also to

15  warrants that contain deliberate or reckless omissions of material facts.  *United States v. Stanert*, 762

16  F.2d 775, 781 (9th Cir. 1985).  "Clear proof of deliberate or reckless omission is not required" to

17  show entitlement to an evidentiary hearing.  *Id.*  "At this stage, all that is required is that the defendant

18  make a substantial showing that the affiant intentionally or recklessly omitted facts required to prevent

19  technically true statements in the affidavit from being misleading."  *Id.*  If, after an evidentiary

20  hearing, the Court finds that the magistrate was misled by false or omitted information, then

21  suppression of the evidence is required.  *United States v. DeLeon*, 979 F.2d 761, 763 (9th Cir. 1992).

22  The affidavit in this case omitted a key fact which, if included, would have further highlighted

23  the lack of probable cause.  Specifically, the affidavit failed to inform the magistrate that OPD had

24  already entered and searched apartment 212 – and allegedly found the three guns – the day before the

25  search warrant issued.  Discovery provided to Mr. Ellis during the state court proceedings, but not by

26  the prosecution in the instant case, includes a probation revocation report for Mr. Ellis that states that

27  the three guns were actually recovered during a *probation search* of apartment 212 on January *21*,

28  2013, i.e., the day before OPD claims it first entered Apartment 212.  Ex. B.

1       The failure of the affiant to include the information that OPD had already (allegedly)

2  conducted a probation search and (allegedly) discovered the guns before the search warrant was

3  signed, was material and misleading, because  the probation search, if it occurred, was unlawful.  At

4  the time OPD entered apartment 212, they had no indication that Mr. Ellis resided in apartment 212 or

5  even that he was in there on the night of January 21 and the morning of January 22.  Indeed, OPD

6  claims to have known from early on that Mr. Ellis actually was in apartment 112 throughout the night

7  of the incident, not apartment 212.  Without any evidence that Mr. Ellis resided in apartment 212, let

8  alone without the probable cause necessary to conduct a probation search, the early search of

9  apartment 212 was an illegal probation search, and OPD therefore declined to mention it in the

10  warrant application.  *See Motley v. Parks*, 432 F.3d 1072, 1074 (9th Cir. 2005) (*en banc*) ("before

11  conducting a warrantless search pursuant to a properly imposed parole condition, law enforcement

12  officers must have probable cause to believe that the parolee resides at the house to be searched.").

13  Regardless, what does seem clear is that the state court judge would never have issued a warrant to

14  search the apartment if he had been told that OPD already searched the apartment hours earlier and

15  already recovered the guns.

16       At the very least, Mr. Ellis has made a sufficient showing to entitle him to a *Franks*

17  evidentiary hearing.  According to the Ninth Circuit, an evidentiary hearing on a motion to suppress

18  should be held if the moving papers allege facts with sufficient definiteness, clarity, and specificity to

19  enable the court to conclude that contested issues of material fact exist.  *United States v. Howell*, 231

20  F.3d 615, 620 (9th Cir. 2000) (*citing, United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986));

21  *United States v. Yost*, 2:07-cr-00145, 2009 U.S. Dist. LEXIS 58088, at *7 (D. Nev. Mar. 26, 2009)

22  (for evidentiary hearing defendant must demonstrate that a "significant disputed factual issue" exists).

23       In the present case, an evidentiary hearing is necessary to resolve various disputed factual

24  issues, including, for example, why the probation search on January 21, 2013, was not mentioned in

25  the search warrant application; why OPD applied for a search warrant in the first place if the guns had

26  already been recovered from apartment 212 pursuant to a lawful probation search; whether the

27  probation search on January 21, 2013, even occurred; and, if it did not, why documents were filed in

28  state court claiming otherwise.

For all of the reasons discussed above, Mr. Ellis requests that the Court suppress all evidence discovered by OPD in apartment 212 or, at the very least, that the Court conduct a *Franks* hearing.

## IV.   THE WARRANT AND THE WARRANT AFFIDAVIT ARE OVERBROAD AND LACK PARTICULARITY

Evidence seized from apartment 212 (and the other apartments) must be suppressed for the additional reason that the warrant for the search was facially overbroad.  To withstand constitutional scrutiny, a warrant must particularly describe the place to be searched and the things to be seized. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004).  A particular warrant prevents general searches, and "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Id*. at 561 (citation and internal quotation omitted).  The items to be seized must be described with particularity in the warrant itself. *Id*. at 557; *United States v. Clark*, 31 F.3d 831, 836 (9th Cir. 1994) ("search warrant must allege with reasonable particularity the types of items that may be seized") (*citing United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986)); *United States v. Cardwell*, 680 F.2d 75, 77 (9th Cir. 1982) (purpose of the constitutional requirement of specificity for search warrants is to prevent law enforcement from engaging in general, exploratory searches with no limits on their discretion).  The requirement of particularity is designed to prevent general exploratory searches which unreasonably interfere with a person's right to privacy.  *Marron v. United States*, 275 U.S. 192, 196 (1927).

"Specificity has two aspects: particularity and breadth. . . .  Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *United States v. Schesso*, 842 F.Supp.2d 1292 (W.D. WA. 2011) (citing *United States v. Hill*, 459 F.3d 966, 973 (9th Cir.2006).  A warrant's compliance with the particularity requirement must be determined from the face of the warrant, including any attachments.  *Groh v. Ramirez*, 540 U.S. 551, 557-58 (2004).

Here, the warrant actually used by the police to guide their search and left at the scene, contained absolutely *no* limitations.  See Ex. C (photo of warrant left at apartment 212).  As the Court can see by reviewing Exhibit C the portion of the warrant which usually contains the words: "For the following property things and evidence," customarily followed by a specific list of the objects to be

searched for, is blank.  There is no description of *any* specific items or things to be seized.   Because the warrant used during the search in this case was blank, the warrant was a general warrant and all evidence, and fruits of that evidence must be suppressed.

Furthermore, while the warrant affidavit that the government ultimately produced to the defense purports to describe certain categories of items to be seized, those categories are not reasonably particularized.  For example, the warrant affidavit lists, in part, the following scope of items to be seized:

> Videotapes, magazines, newspaper articles, audio recordings, writings or other publishing, computers, computer records, cell phones, cell phone records or other media that may contain real or simulated acts of violence including but not limited to items pertaining to the attempt to murder documented in this report.

Ex. A.  There is no factual support in the warrant affidavit to support seizing videotapes, magazines, newspaper articles, etc., and, regardless, the category itself lacks the reasonable particularity required by the Ninth Circuit.  *See*, *e.g.*, *Clark*, 31 F.3d at 836 (invalidating on as overbroad a warrant that authorized a search for "narcotic controlled substances, drug paraphernalia, marijuana cultivation equipment, instructions, notes, cultivation magazines, currency, documents, and records and fruits and instrumentalities of [a] violation" of the criminal statute at issue); *United States v. Cardwell*, 680 F.2d 75, 77 (9th Cir. 1982) (invalidating a warrant authorizing the seizure of "corporate books and records, including but not limited to cancelled and duplicate checks, check stubs, journals, ledgers, weekly summaries, driver trip envelopes, and daily schedules, of [certain corporations], which are the fruits and instrumentalities, of violations of" the criminal statute at issue); *United States v. Crozier*, 777 F.2d 1376, 1381 (9th Cir. 1985) (invalidating as overbroad a warrant that authorized seizure of "evidence of a violation" of underlying criminal statute).

The warrant affidavit also lacked any date restrictions, a factor to which courts give great weight in determining the particularity of a warrant.  *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995); *see also United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999) ("failure to limit broad descriptive terms by relevant dates, when such dates are available to police, will render a warrant overbroad").  There was no safeguard in place to prevent the government from conducting the general,

exploratory search the Fourth Amendment is intended to prevent.

The search warrant affidavit also sets forth the following additional categories of items to be seized:  "stolen or embezzled property"; "property or things used as the means of committing a felony"; "property or things in the possession of person with the intent to use it as a means of committing a felony . . . ."; and "property or things which consist of an item or constitute evidence which tends to show that a felony has been committed."  Ex. A at RD 003048.  For the same reasons discussed above, these categories are also overbroad and lack the necessary particularity.  There is no meaningful distinction between, for example, a category defined as "property or things used as the means of committing a felony" and the category – held to be overbroad by Ninth Circuit – or "evidence of a violation" of underlying criminal statute.  *Crozier*, 777 F.2d at 1381.  If anything, the category from *Crozier* is more specific than the category in the warrant here, as it is limited to evidence of a violation of the criminal statute at issue in that case, while the category here encompasses any felony.  *See also Cardwell*, 680 F.2d at 77 ("If items that are illegal, fraudulent, or evidence of illegality are sought, the warrant must contain some guidelines to aid the determination of what may or may not be seized," and a warrant allowing seizure of all books and records that are evidence of a crime is not sufficiently specific.)

In addition, the categories of items in the warrant affidavit (but wholly absent from the warrant itself) include the same broad catchall phrases that, according to the Ninth Circuit, render a warrant facially overbroad.  *See Clark*, 31 F.3d at 836 (warrant facially overbroad when it included a catchall phrase authorizing seizure of "fruits and instrumentalities of" the alleged crime).  The categories of "stolen or embezzled property;" "property or things used as the means of committing a felony;" "property or things in the possession of a person with the intent to use it as a means of committing a felony . . . ," and "property or things which consist of an intent or constitute evidence which tends to show that a felony has been committed . . . ," are all boilerplate catchall phrases of the which the Ninth Circuit disproves.  Ex. A at RD 003408.  Finally, not only are those categories overbroad, but they also lack the particularized nexus to the factual assertions in the affidavit.  *See Clark*, 31 F.3d at 836; *Cardwell*, 680 F.2d at 77; *Crozier*, 777 F.2d at 1381.

As in *Clark*, it is apparent on the face of the warrant affidavit that the catchall phrases

authorizing seizure of "stolen or embezzled property"; "property or things used as the means of committing a felony"; "property or things in the possession of person with the intent to use it as a means of committing a felony . . . ."; and "property or things which consist of an item or constitute evidence which tends to show that a felony has been committed," did not adequately describe the items to be seized. *Clark*, 31 F.3d at 836. "In light of that facial deficiency, the executing officers could not reasonably rely on it, under the objective test of *Leon*." *Id.* (*citing Leon*, 468 U.S. at 923 ("a warrant may be so facially deficient - i.e., in failing to particularize . . . the things to be seized - that the executing officers cannot reasonably presume it to be valid"); *see also Crozier*, 777 F.2d at 1381 (agent cannot reasonably rely on warrant authorizing seizure of "evidence of violation" of particular criminal statute); *United States v. Spilotro*, 800 F.2d 959, 961 (9th Cir. 1986) (rejecting as overbroad warrants that allowed the seizure of "documents . . . which are evidence of violations of [specific provisions of Title 18] and which are or may be: (1) property that constitutes evidence of the commission of a criminal offense; or contraband, the fruits of crime, or things otherwise criminally possessed; or (3) property designed or intended for use or which is or has been used as the means of committing a criminal offense" because "the warrants here do not describe the items to be seized with sufficient particularity."); *Center Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 747, 750 (9th Cir. 1989) ("The warrants' provision for the almost unrestricted seizure of items which are 'evidence of violations of federal criminal law' without describing the specific crimes suspected is constitutionally inadequate."); *United States v. Stubbs*, 873 F.2d 210, 212 (9th Cir. 1989) (same); *United States v. Cioffi*, 668 F. Supp. 2d 385, 392 (E.D.N.Y. 2009) ("it is always necessary – and hardly onerous – to confine any search to evidence of particular crimes.")

"The remedy for an overbroad search warrant is suppression of the seized evidence." *Clark*, 31 F.3d at 836. Because the warrant itself lacked *any* description of things to be seized, and because the warrant affidavit's description was overborad and lacking in particularity, all evidence seized pursuant to the above-cited warrant must therefore be suppressed. *Id.*; *Kow*, 58 F.3d at 428-30; *Stubbs*, 873 F.2d at 212-13; *Spilotro*, 800 F.2d at 967-68.

///

///

## V.     THE GOOD-FAITH EXCEPTION TO THE EXCLUSIONARY RULE DOES NOT APPLY

Although the Supreme Court has established a "good faith exception" to the exclusionary rule when "officers act in reasonable reliance on a search warrant issued by a neutral magistrate but ultimately found to be invalid," that exception does not apply to cases such as this one, "when the affidavit is so lacking in indicia of probable cause that official belief in its existence is objectively unreasonable." *United States v. Leon*, 468 U.S. 897, 922-23 (1984).  Suppression is appropriate "if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926.  The government bears the burden of proving that reliance on the warrant was objectively reasonable. *See United States v. Kow*, 58 F.3d 423, 428 (9th Cir. 1995).

The government cannot meet that burden in this case.  First, and as set forth in Section I., *supra*, the warrant lacks any factual nexus between Mr. Ellis and apartment 212.  There was *no* indicia of probable cause to search that specific apartment and any belief by OPD that probable cause existed was "objectively unreasonable." *Leon*, 468 U.S. at 922-23.

Second, and as set forth in Section II., *supra*, the warrant affidavit was legally deficient because of its wholesale reliance on an unreliable tip from a confidential informant. *See Luong*, 470 F.3d at 903 (finding good faith exception inapplicable because the affidavit was "critical[ly] deficien[t]" in that it relied "on an unverified tip as the lynchpin for its theory of probable cause").

Third, the good faith exception does not apply to affidavits that contain deliberate and/or reckless misrepresentations and omissions. *See Leon*, 468 U.S. at 923 (good faith exception does not apply, and suppression remains appropriate, "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"), *citing Franks*, 438 U.S. at 154.  As set forth in Section III., *supra*, the affidavit in this case contained a material omission in that it did not disclose to the magistrate the fact that OPD claimed to have entered and searched apartment 212 on a probation search on January 21, 2013, the day before the warrant application was submitted.  This material omission removes this case from the ambit of the good-faith exception.

Finally, the warrant itself lacked *any* description of any items to be seized and the warrant affidavit lacked sufficient indicia of probable cause to trigger the good-faith exception.  The warrant itself was blank.  The affidavit did not allege a single fact connecting Mr. Ellis to apartment 212.  Nor did it establish any nexus between Ellis and the alleged criminal activity.  It therefore alleged no facts to establish probable cause of an offense, or that any evidence of criminal activity would be found at the alleged residence of Mr. Ellis.  The affidavit thus "contains no appreciable indicia of probable cause."  *Luong*, 470 F.3d at 903; *see also United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988) (holding that *Leon's* good-faith exception did not apply because the officers did not present a colorable showing that evidence or contraband would be found at the searched residence).  Under the circumstances at issue here, "no reasonably well trained police officer would have believed that there was probable cause" that apartment 212 contained any evidence of criminality.  *Leon*, 468 U.S. at 926.

## <u>CONCLUSION</u>

For all of the reasons discussed above, the warrant for the search of apartment 212 lacked probable cause and all evidence discovered in connection with that search must be suppressed.

Respectfully submitted,

MARTHA BOERSCH

DATED: February 6, 2015

_____*/s/ Martha Boersch*_____
MARTHA BOERSCH